**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

| | | |
|---|---|---|
| FONOVISA, INC, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1-06-CV-011-C |
| | § | |
| LARRY ALVAREZ, | § | ECF |
| | § | |
| Defendant. | § | |
| | § | |

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**
**<u>IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT</u>**

# TABLE OF CONTENTS


| | | |
|---|---|---|
| Table of Authorities | | ii |
| Preliminary Statement | | 1 |
| Background | | 2 |
| I. | Statutory Background: The Copyright Act | 2 |
| II. | Interest of the United States | 4 |
| III. | The United States Respectfully reserves the Right to Supplement Its Statement of Interest Regarding the "Making Available" Issue Raised by Defendant | 5 |
| Argument: | The Unauthorized Distribution of Electronic Files over the Internet Violates the Exclusive Right of Distribution | 7 |
| A. | The Copyright Act's Definition of the Distribution Right Includes the Unauthorized Distribution of Electronic Files over the Internet | 8 |
| B. | Defendant's Reliance on Legislative History Is Similarly Unavailing | 11 |
| Conclusion | | 16 |

# TABLE OF AUTHORITIES

## Cases

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ........ 10

*BedRoc Ltd. v. United States*, 541 U.S. 176 (2004) ........ 11

*Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465 (1997) ........ 13

*Harper & Row, Publs., Inc. v. Nation Enterprises*, 471 U.S. 539 (1985) ........ 3

*Holloway v. United States*, 526 U.S. 1 (1999) ........ 11, 12

*In re Aimster Copyright Litigation*, 334 F.3d 643 (7th Cir. 2003) ........ 10

*In re Napster, Inc. Copyright Litigation*, 377 F. Supp. 2d 796 (N.D. Cal. 2005) ........ 10

*Kelly v. L.L. Cool J.*, 145 F.R.D. 32 (S.D.N.Y. 1992), *aff'd* 23 F.3d 398 (2d Cir.), *cert. denied*, 513 U.S. 950 (1994) ........ 14

*Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50 (2004) ........ 11

*MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993), *cert. dismissed*, 510 U.S. 1033 (1994) ........ 8

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 125 S. Ct. 2764 (2005) ........ 9

*New York Times Co. v. Tasini*, 533 U.S. 483 (2001) ........ 9

*Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828 (C.D. Cal. 2006) ........ 9, 10, 11

*Playboy Enterprises, Inc. v. Frena*, 839 F. Supp. 1552 (M.D. Fla. 1993) ........ 10

*Pushman v. New York Graphic Society, Inc.*, 287 N.Y. 302, 39 N.E.2d 249 (1942) ........ 12

*United States v. Fisk*, 70 U.S. (3 Wall.) 445 (1865) ........ 11

## Statutes

17 U.S.C. § 101 ........ 3, 4, 8, 12

17 U.S.C. § 102 ........ 2

17 U.S.C. § 106 ........ passim

17 U.S.C. § 107 ........ 10

17 U.S.C. § 115 ........ 14, 15

17 U.S.C. § 202 ........ 12

17 U.S.C. § 204 ........ 12

17 U.S.C. § 301 ........ 12

17 U.S.C. § 506 ........ 1, 4, 14, 15

18 U.S.C. § 2319 ........ 1, 4

28 U.S.C. § 517 ........ 1

An Act to Implement the United States-Australia Free Trade Agreement, PL 108-286, Title I, Sec. 101(a)(2), 118 Stat. 920 (2004) ........ 6

Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* ........ 1, 3, 11, 13

**Other Authorities**

Free Trade Agreement, U.S.-Australia (2004) ........ 6

H.R. Rep. No. 94-1476, 1976 U.S.C.C.A.N. 5659 (Sept. 3, 1976) ........ 3, 13

Letter from Marybeth Peters, Register of Copyrights, to Rep. Howard Berman, Sept. 25, 2002 (reprinted in *Piracy of Intellectual Property on Peer-to-Peer Networks: Hearing Before the Subcommittee on Courts, the Internet and Intellectual Property of the House Comm. on the Judiciary*, 107th Cong. 114-15 (2002) ........ 7

Testimony of Marybeth Peters, The Register of Copyrights, before the Subcommittee on Courts and Intellectual Property, Committee on the Judiciary, United States House of Representatives, 105th Congress, 1st Sess., Sept. 16, 1997, on WIPO Copyright Treaties Implementation Act (H.R. 2281) and On-Line Copyright Liability Limitation Act (H.R. 2180) ........ 7

U.S. Submission to World Trade Organization Trade Policy Review Body in Response to Questions from Chile, WT/TPR/M/126/Add.3, Chile #4 (Nov. 22, 2004) ........ 7

U.S. Submission to World Trade Organization Trade Policy Review Body in Response to Questions from Japan regarding Copyright Issues, WT/TPR/M/88/Add.1 (Jan. 8, 2002) ........ 7

World Intellectual Property Organization Performances and Phonograms Treaty (1996) ........ 6

World Intellectual Property Organization Copyright Treaty (1996) .............................................. 6

**Treatises**

M. Nimmer and D. Nimmer, 1 Nimmer on Copyright § 4.07 (2001) ............................................ 8

## PRELIMINARY STATEMENT

The United States of America respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517.[1] The United States, through the Department of Justice's Criminal Division and the United States Attorney's Offices across the country, enforce the criminal provisions of the Copyright Act pursuant to 17 U.S.C. § 506 and 18 U.S.C. § 2319. Many of these prosecutions, past and present, are predicated on the unauthorized distribution of electronic files over the Internet, *i.e.*, online or digital distribution. As a result, the United States has a significant interest in this Court's construction of the distribution right of copyright owners as provided for in Section 106(3) of the Copyright Act of 1976, 17 U.S.C. § 106(3).

Section 106(3) of the Copyright Act of 1976 provides that every copyright holder has the right "to do and to authorize" the "distribut[ion of] copies or phonorecords" of the copyrighted work. The overwhelming weight of judicial authority and the plain meaning of the statutory language of 17 U.S.C. § 106(3) and related statutory provisions of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, as amended (also referred to as the "Copyright Act" or the "Act"), demonstrate that the exclusive right of distribution set forth in § 106(3) encompasses distribution of copyrighted works over the Internet. Defendant's contention that the "material object" terminology of the Copyright Act excludes Internet distribution from § 106(3) distorts the clear language of the Act and has the nonsensical result of excluding from its reach distribution of copyrighted works through the most powerful and efficient method of distribution available.

The Court should not adopt this unsupported construction of the distribution right. In every case in which unauthorized Internet or online distribution of copyrighted works has been at

[1] "The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any . . . district in the United States" to attend to any "interest of the United States." 28 U.S.C. § 517.

issue, courts have found that such activity constitutes a violation of the distribution right. Further, Defendant's strained reading of the distribution right set forth in § 106(3) cannot be reconciled with numerous, related provisions of the Copyright Act. Indeed, the "material object" terminology on which Defendant relies was not adopted to limit the distribution right, but to eliminate a common law presumption, *i.e.*, a presumption that the sale of the object embodying a copyrighted work (*e.g.*, a manuscript) carried with it the intangible legal right in the copyright itself. Thus, by defining "copies" and "phonorecords" as material objects, Congress was not carving out future computer-to-computer distributions, but was distinguishing between the intangible right in the work and the physical embodiment of that work in order to free the distribution right from its common law limitations. Finally, subsequent amendments to the Copyright Act and its legislative history show that Congress unequivocally understood the distribution right of § 106(3) to encompass, among other things, Internet distribution of copyrighted works.

## BACKGROUND

### I. STATUTORY BACKGROUND: THE COPYRIGHT ACT

Under the Copyright Act, "copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). The Copyright Act grants copyright owners six exclusive rights in copyrighted works: (1) to reproduce copyrighted works in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public; (4) to perform the copyrighted work publicly; (5) to display the copyrighted work publicly; and (6) to perform copyrighted

sound recordings publicly by means of a digital audio transmission. 17 U.S.C. § 106. Paragraphs (4)-(6) of § 106 do not apply to all copyrighted works, but only to those types of works specified in each of these paragraphs. In addition, all six of these rights are subject to limitations set forth in sections 107 through 122 of the Copyright Act. *Id.*

First enacted as part of the Copyright Act of 1976, section 106(3) grants copyright owners the exclusive right "to do and to authorize" the "distribut[ion of] copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." Although the Copyright Act does not define the term "distribute,"[2] the Act does define the terms "copies" and "phonorecords." 17 U.S.C. § 101. Specifically, the Act provides that "phonorecords" are "material objects in which sounds, other than those accompanying a motion picture or other audiovisual work, are fixed by any method now known or later developed, and from which the sounds can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." *Id.* Similarly, the Act provides that "copies" are "material objects, other than phonorecords, in which a work is fixed by any method now know or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." *Id.*

The Act does not define the phrase "material objects," but does prescribe that "[a] work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, by or

---

[2] Although the Act does not define "distribution," it does define "publication" of a copyrighted work. Publication requires either "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending," or alternatively, "[t]he offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display." 17 U.S.C. § 101. "A public performance or display of a work does not of itself constitute publication." *Id.* The Supreme Court has observed that the term "distribution" is closely related to the right of "publication," *i.e.*, a copyright owner's "'right to control the first public distribution of an authorized copy . . . of his work.'" *Harper & Row, Publs., Inc. v. Nation Enters.*, 471 U.S. 539, 552 (1985) (quoting H.R. Rep. No. 94-1476, at 62, *reprinted in*, 1976 U.S.C.C.A.N. 5659, 5675).

under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *Id.*

## II. INTEREST OF THE UNITED STATES

The Department of Justice's Criminal Division and United States' Attorneys offices across the country prosecute defendants under several federal criminal intellectual property laws, including criminal copyright infringement pursuant to 17 U.S.C. § 506 and 18 U.S.C. § 2319. To prosecute a defendant for felony copyright infringement, the federal government must establish beyond a reasonable doubt that, *inter alia*, the defendant committed copyright infringement by unauthorized reproduction or distribution only. *See* 18 U.S.C. § 2319 (imposing maximum prison terms of more than one year only where the offense consists of an infringement of the reproduction or distribution rights). The distribution right, set forth in 17 U.S.C. § 106(3), and cases interpreting this right, apply equally to civil and criminal copyright infringement.

In the last five years, the number of federal prosecutions for felony copyright infringement over the Internet has increased significantly. In these cases, the government regularly prosecutes defendants for illegally distributing pirated copies of copyrighted works over the Internet. The government has convicted over 100 defendants for unauthorized distribution of pirated copies over the Internet, and almost 100 more indictments are pending against defendants accused of similar crimes.

Defendant argues that when an unauthorized transfer of copies or phonorecords of copyrighted works occurs over the Internet, then no "distribution" has occurred under the Copyright Act. If the Court were to adopt this argument, then former, current, and future copyright prosecutions could be threatened. For instance, not only would current indictments based on violations of the distribution right be jeopardized, but defendants already convicted for

violating this right would have a new basis for challenging their convictions. In addition, under Defendant's interpretation of the distribution right, federal prosecutors would have no choice but to rely *exclusively* on a violation of the reproduction right to establish felony copyright infringement that occurs online. Accordingly, this Court's decision on whether the distribution right applies to the electronic transfer of digital files will have a direct impact on federal prosecutions of criminal copyright infringement and hence directly affect the interests of the United States.

## III. THE UNITED STATES RESPECTFULLY RESERVES THE RIGHT TO SUPPLEMENT ITS STATEMENT OF INTEREST REGARDING THE "MAKING AVAILABLE" ISSUE RAISED BY DEFENDANT

This Statement of Interest is limited to the United States' interest in protecting its criminal prosecutions, which are immediately put into question by the current posture of this case to the extent that it raises the question of whether the dissemination of copies or phonorecords over the Internet infringes the copyright owner's exclusive distribution right.[3] At this juncture in the case, the United States has not sought through this Statement of Interest to address the issue raised by defendant of whether the copyright holder's exclusive rights under the Copyright Act encompass the right to make electronic files available for downloading (the "making available" right). That issue is not necessary for a resolution of Defendant's motion at this stage of the case where Defendant attacks the adequacy of a complaint that alleges in a single count that Defendant infringed Plaintiffs' rights by (1) downloading/reproducing their works, (2) distributing their works to others and/or (3) making their works available for distribution to others. Compl. ¶ 15. Indeed, Defendant does not even contest the adequacy of

[3] In contrast, the United States has not prosecuted acts that consist merely of making copyrighted works available for downloading.

Plaintiff's claim insofar as it relates to the downloading/reproduction of copyrighted works, and as is demonstrated herein, the distribution theory is also well-grounded.

Nevertheless, should this Court deem it necessary to reach the "making available" issue now or at a later point in this litigation, the United States respectfully reserves its right to file a Statement of Interest addressing it. The United States has entered into and implemented two treaties and several Trade Agreements containing specific provisions regarding the "making available" right. *See, e.g.*, World Intellectual Property Organization ("WIPO") Copyright Treaty, art. 8 (1996) ("[A]uthors of literary and artistic works shall enjoy the exclusive right of authorizing any communication to the public of their works, by wire or wireless means, including the making available to the public of their works in such a way that members of the public may access these works from a place and at a time individually chosen by them"); WIPO Performances and Phonograms Treaty, art. 14 (1996) (copyright holders of phonorecords "shall enjoy the exclusive right of authorizing the making available to the public of their phonograms, by wire or wireless means, in such a way that members of the public may access them from a place and at a time individually chosen by them"); Free Trade Agreement, U.S.-Australia, Art. 17.5 ("[E]ach Party shall provide to authors the exclusive right to authorize or prohibit the communication to the public of their works, by wire or wireless means, including the making available to the public of their works in such a way that members of the public may access those works from a place and at a time individually chosen by them"). Notably, with respect to each Trade Agreement containing provisions regarding the "making available" right, the President has informed Congress that no change to existing U.S. law was required to implement those provisions. *See, e.g.*, An Act to Implement the United States-Australia Free Trade Agreement, PL 108-286, Title I, Sec. 101(a)(2), 118 Stat. 920 (2004). Consequently, the interests of the

United States regarding these agreements could be implicated in the event the "making available" issue were to be reached by this Court.[4]

## ARGUMENT

### THE UNAUTHORIZED DISTRIBUTION OF ELECTRONIC FILES OVER THE INTERNET VIOLATES THE EXCLUSIVE RIGHT OF DISTRIBUTION

Defendant contends that, as a matter of law, a copyright owner's exclusive right of distribution does not apply on the Internet. Defendant reasons that, because the distribution right involves "copies" or "phonorecords" in the form of "material objects" in which copyrighted works are fixed, the copyright owner's exclusive right of distribution cannot include the electronic transfer of copies of copyrighted works over the Internet. *E.g.*, Defendant's Mar. 6, 2006 "Memorandum in Support of His Motion to Dismiss Plaintiffs' Complaint" ("Op. Mem.") at 9-10.[5] Defendant further contends, summarily, that the Copyright Act's legislative history supports his position. *Id.* at 10. Defendant, however, has misinterpreted the statute and its legislative history, and courts that have referenced the distribution right in the context of online file transfers have uniformly viewed such transfers of digital copies as constituting a distribution.

---

[4] The Government notes that outside the context of this case, the United States Copyright Office and the United States Patent and Trademark Office have stated that the exclusive rights of the copyright holder encompass such a "making available" right. *See*, *e.g.*, Testimony of Marybeth Peters, The Register of Copyrights, before the Subcommittee on Courts and Intellectual Property, Committee on the Judiciary, United States House of Representatives, 105th Congress, 1st Sess., Sept. 16, 1997, on WIPO Copyright Treaties Implementation Act (H.R. 2281) and On-Line Copyright Liability Limitation Act (H.R. 2180) (available at http://www.copyright.gov/docs/2180_stat.html); Letter from Marybeth Peters, Register of Copyrights, to Rep. Howard Berman, Sept. 25, 2002, at p. 1 (reprinted in *Piracy of Intellectual Property on Peer-to-Peer Networks: Hearing Before the Subcommittee on Courts, the Internet and Intellectual Property of the House Comm. on the Judiciary*, 107th Cong. 114-15 (2002); U.S. Submission to World Trade Organization ("WTO") Trade Policy Review Body in Response to Questions from Japan regarding Copyright Issues, WT/TPR/M/88/Add.1 at 121 (Jan. 8, 2002) (stating that "making available" right is provided under existing U.S. copyright law ); *accord* U.S. Submission to WTO Trade Policy Review Body in Response to Questions from Chile, WT/TPR/M/126/Add.3, Chile #4 at 140 (Nov. 22, 2004).

[5] The United States does not concede Defendant's unexplained assumption that computer-to-computer transmissions are not material objects. *See* Op. Mem. At 10. This Court, however, does not need to reach the question of whether online transmissions – which are indisputably physical phenomena – are "material objects." As discussed *infra*, Congress intended the "material object" terminology to distinguish between intangible legal rights in the copyrighted work itself and the physical objects in which the copyrighted work was fixed. "Material object" was never intended to create a requirement that works be fixed in any particular type of object.

### A. THE COPYRIGHT ACT'S DEFINITION OF THE DISTRIBUTION RIGHT INCLUDES THE UNAUTHORIZED DISTRIBUTION OF ELECTRONIC FILES OVER THE INTERNET

Section 106(3) grants copyright owners the exclusive right "to do and to authorize" the distribution of "copies or phonorecords" of a copyrighted work to the public. 17 U.S.C. § 106(3). The "copies" and "phonorecords" that are distributed are defined as "material objects" that are "fixed by any method now known or later developed." 17 U.S.C. § 101. The Copyright Act, however, does not describe what form a copy or phonorecord must take as it is disseminated from one point to another. Where, however, the recipient of the copy or phonorecord has, at the end of the transaction, a material object embodying a copyrighted work, a distribution has occurred. *See, e.g.*, M. Nimmer and D. Nimmer, 1 Nimmer on Copyright § 4.07 (2001) (publication has occurred where recipient gains "a possessory interest in tangible copies" of the copyrighted work). Thus, the fact that a defendant distributes a digital copy of a copyrighted work *electronically* does not categorically exclude that dissemination from the distribution right where the result of the transfer is a fixation of that work on a recipient's computer – *i.e.*, a material object embodying a copyrighted work.

This interpretation of the distribution right is consistent with the view that a defendant who downloads a copyrighted work to his computer without authorization violates the reproduction right set forth in 17 U.S.C. § 106(1). *See, e.g., MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993) (holding that computer random access memory creates a "copy" of computer program under the Copyright Act and that "[i]n the absence of ownership of the copyright or express permission by license, such acts constitute copyright infringement") (quotations omitted), *cert. dismissed*, 510 U.S. 1033 (1994). Further, an electronic file embodying a sound recording that resides on a downloader's computer constitutes

a copy or phonorecord under the Copyright Act. Thus, if an electronic file is undisputedly a "copy" or "phonorecord" when it resides on a computer, then disseminating such a file over a peer-to-peer ("P2P") network so that it appears as an electronic file on another computer constitutes a distribution pursuant to 17 U.S.C. § 106(3). *See Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 844 (C.D. Cal. 2006) ("[i]n the internet context, an actual dissemination means the transfer of a file from one computer to another"). Simply put, the fact that the file was disseminated electronically does not change the fact that a distribution has occurred.

Although no court has exhaustively analyzed the issue, every court that has addressed it, either summarily or in *dicta*, has found that the unauthorized dissemination of a digital copy of a copyrighted work over the Internet constitutes a distribution under § 106(3). For example, the Supreme Court found that uploading copyrighted articles to electronic databases and publicly distributing them through the NEXIS database violates the exclusive right of distribution under § 106(3). *New York Times Co. v. Tasini*, 533 U.S. 483, 498 (2001) ("LEXIS/NEXIS, by selling copies of the Articles through the NEXIS Database, 'distribute copies' of the Articles 'to the public by sale,' § 106(3)"). Moreover, in the context of P2P file sharing, the Supreme Court held that purveyors of P2P file-sharing software could be liable under a contributory or "inducement" theory where users of such software directly infringe copyrights. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 125 S. Ct. 2764, 2782 (2005). Implicit in both *Tasini* and *Grokster* is the Supreme Court's understanding that the unauthorized electronic dissemination of digital files could violate the distribution right. *E.g.*, *Grokster*, 125 S. Ct. at 2776 ("[t]he argument for imposing indirect liability in this case is, however, a powerful one, given the number of infringing downloads that occur every day using [Defendants'] software"). Lower courts appear to share that understanding. *See also In re Aimster Copyright Litigation*, 334 F.3d 643, 645 (7th

Cir. 2003) ("If the music is copyrighted, such [file-]swapping, which involves making and transmitting a digital copy of the music, infringes copyright."), *cert. denied*, 540 U.S. 1107 (2004); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001) (Napster users infringed both the reproduction and distribution rights of copyright owners whose works were uploaded and downloaded via the Napster network); *In re Napster, Inc. Copyright Litigation*, 377 F. Supp. 2d 796, 806 (N.D. Cal. 2005) (same); *Playboy Enterprises, Inc. v. Frena*, 839 F. Supp. 1552, 1556 (M.D. Fla. 1993) (holding that electronic dissemination of unauthorized copies of copyrighted work over subscription billboard service violated distribution right).

Against this tide of case law, Defendant essentially relies on a single case, *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828 (C.D. Cal. 2006). *See* Op. Mem. at 10. In *Perfect 10,* the court held that the question of whether Google's thumbnails directly infringed the plaintiff's distribution right was moot because the Court had already concluded that Google directly infringed the plaintiff's reproduction and public display rights. 416 F. Supp. 2d at 845 n.11. Nonetheless, and contrary to defendant's claim here, the court noted that Google's online transfer of thumbnails to users' computers *does* constitute a distribution, and that Google would likely be able to rely upon the fair use doctrine under 17 U.S.C. § 107 as an affirmative defense. *Id.* at 845. Significantly, courts turn to the fair use defense only *after* determining that a defendant has directly infringed (*e.g.*, by distribution) a copyrighted work. *Id.* ("[h]aving found that the thumbnails directly infringe [plaintiff's] copyrights, the Court turns to Google's affirmative defense of fair use"). In fact, the Court squarely contradicts defendant's position by stating that an "actual dissemination" of copies of a copyrighted work constitutes a distribution under 17 U.S.C. § 106(3), and that, "[i]n the internet context, an actual dissemination means the transfer of a file from one computer to another." *Id.* at 844. Thus, to the extent *Perfect 10* is

relevant to an analysis of the distribution right at issue in this case, it supports the government's position.

**B. DEFENDANT'S RELIANCE ON LEGISLATIVE HISTORY IS SIMILARLY UNAVAILING**

The legislative history of the Copyright Act of 1976 shows that Congress did not limit the distribution right to preclude online dissemination of copies of copyrighted works and thus does not support defendant's interpretation of 17 U.S.C. § 106(3). Indeed, the statutory language and legislative history of the Copyright Act of 1976 clearly show that Congress's use of the term "material object" was not intended to limit the distribution right in the manner asserted by Defendant, but was used instead for the express purpose of eliminating a common law doctrine that had imposed problematic limitations on the copyright owners' ability to distribute the copyrighted work. The origin and purpose of the "material object" requirement show that Defendant's argument would require wrenching the "material object" requirement out of its context and, further, would render other provisions of the Copyright Act nonsensical.

"In the construction of statutes, it is the duty of the court to ascertain the clear intention of the legislature." *United States v. Fisk*, 70 U.S. (3 Wall.) 445, 447 (1865). The starting point for that endeavor is the statutory text. *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004). However, "[s]tatutory construction is a holistic endeavor," requiring courts to read the text of a provision in its proper context rather than view it in isolation. *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004) (internal quotation marks omitted); *accord Holloway v. United States*, 526 U.S. 1, 7 (1999) ("the meaning of statutory language, plain or not, depends on context" (internal quotation marks omitted)).

Contrary to Defendant's assertions, the Copyright Act's use of the term "material object" does not exclude electronic dissemination of copyrighted work from the distribution right of

§ 106(3). While "copies" and "phonorecords" are defined as being "material objects," *see* 17 U.S.C. § 101 (defining "copies" and "phonorecords"), this definition cannot be understood in isolation from other relevant provisions of the Copyright Act. *See, e.g., Holloway*, 526 U.S. at 7. Viewed in the larger context of the Act and its legislative history, the term "material object" simply eliminates a quirk of common law pursuant to which a copyright owner was presumed to have sold the intangible right in the copyrighted work itself simply by selling the manuscript or work of art embodying the work. *See, e.g., Pushman v. New York Graphic Society, Inc.*, 287 N.Y. 302, 39 N.E.2d 249 (1942).

To eliminate this common-law presumption, Congress drew a sharp distinction in Section 202 of the Copyright Act between the intangible copyright in the work itself and its physical embodiment.[6] Clarifying the purpose of this distinction, Congress stated in the legislative history relevant to this section that "[t]he principle restated in section 202 is a fundamental and important one: that copyright ownership and ownership of the material object in which the copyrighted work is embodied are entirely separate things" and that through "the interaction of this section [202] and the provisions of section 204(a) [transfer of copyright ownership] and 301 [federal preemption of common and state copyright law], the bill would change a common law doctrine exemplified by the decision in *Pushman v. New York Graphic Society, Inc.*, 287 N.Y.

---

[6] Section 202, distinguishing between ownership of a copyright and ownership of the "material object" in which the work is fixed, reads as follows:

> **§ 202 Ownership of copyright as distinct from ownership of a material object**
>
> Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied. Transfer of ownership of any material object, including the copy or phonorecord in which the work is first fixed, does not of itself convey any rights in the copyrighted work embodied in the object; nor, in absence of any agreement, does transfer of ownership of a copyright or of any exclusive rights under a copyright convey property rights in any material object.

302, 39 N.E.2d 249 (1942)." H.R. Rep. No. 94-1476, at 124, *reprinted in* 1976 U.S.C.C.A.N. 5659, 5739-40. Thus, by using the term "material object," Congress was not endeavoring to engraft an inflexible, "material object" requirement on the distribution right, thereby excluding future, more technologically advanced methods of distributing copies of the copyrighted work.

Indeed, construing the term "material object" in the limiting and artificial manner urged by Defendant would conflict with the broad, flexible reading that Congress intended for that term. In enacting the Copyright Act of 1976, Congress was aware that advances in technology had already, and would continue to, affect the operation of copyright law. *See, e.g.*, H.R. Rep. No. 94-1476, at 47, 1976 U.S.C.C.A.N. at 5660 ("The technical advances have generated new industries and new methods for the reproduction and dissemination of copyrighted works, and the business relations between authors and users have evolved new patterns."). Further, Congress specifically rejected any "artificial . . . distinctions" between the various forms or media in which copyrighted works subsist, noting that there are a "multitude of material objects in which [a work] can be embodied." H.R. Rep. No. 94-1476, at 52-53, 1976 U.S.C.C.A.N. at 5666. Indeed, the Report was clear about the need for flexibility in this area:

> Under the bill it makes no difference what the form, manner, or medium of fixation may be -- whether it is in words, numbers, notes, sounds, pictures, or any other graphic or symbolic indicia, whether embodied in a physical object in written, printed, photographic, sculptural, punched, magnetic, or any other stable form, and whether it is capable of perception directly or by means of any machine or device 'now known or later developed.'

H.R. Rep. No. 94-1476, at 52, 1976 U.S.C.C.A.N. at 5665.

Further, interpreting § 106(3) not to encompass electronic transfers of files would impermissibly render superfluous, indeed, nonsensical, numerous provisions of the Copyright Act. *See, e.g., Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 472 (1997)

("legislative enactments should not be construed to render their provisions surplusage"). For instance, the compulsory licensing provision of 17 U.S.C. § 115 would become nonsensical if Defendant's reading of § 106(3) were correct. Section 115 states, "[i]n the case of nondramatic musical works, the exclusive rights provided by clauses (1) and (3) of section 106, to make and to distribute phonorecords of such works, are subject to compulsory licensing under the conditions specified in the section." Because the compulsory licensing scheme explicitly compels copyright owners to grant a license for "digital phonorecord deliveries" (DPDs) of copyrighted nondramatic musical works,[7] 17 U.S.C. § 115(a)(1), that portion of the licensing scheme makes no sense if the distribution right of 106(3) is read not to encompass the very DPDs that copyright owners are required to license. Similarly, certain provisions relating to criminal infringement of copyrights, which, *inter alia*, provide for criminal enforcement of the copyright owner's right of distribution, would be rendered meaningless if Defendant's position were adopted.[8] *See* 17 U.S.C. § 506(a)(1)(B) (proscribing willful infringement if the infringement was committed "by the reproduction or distribution, including by electronic means … of 1 or more copies or phonorecords of 1 or more copyrighted works . . .") and 17 U.S.C. § 506(a)(1)(C) (proscribing infringement "by the distribution of a work . . . on a computer network . . .").

Accordingly, there is no basis in the statute or its legislative history to read the Copyright Act as excluding from the distribution right electronic dissemination of copyrighted works over the Internet where the recipient obtains a copy. By defining copies and phonorecords in the

[7] Section 115(d) defines "digital phonorecord delivery" as "each individual delivery of a phonorecord by digital transmission of a sound recording which results in a specially identifiable reproduction by or for any transmission recipient of a phonorecord of that sound recording, regardless of whether the digital transmission is also a public performance of the sound recording of any nondramatic musical work embodied therein."

[8] *See Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 39 (S.D.N.Y. 1992) (conduct that does not support civil action for copyright infringement cannot constitute criminal conduct under criminal provisions of copyright law), *aff'd* 23 F.3d 398 (2d Cir.), *cert. denied*, 513 U.S. 950 (1994).

manner in which it did, Congress did not engraft a limitation that would serve to exclude the right to control distribution of copyrighted works on the Internet. Instead, Congress was endeavoring to free copyright owners from a common-law presumption that impeded distribution by drawing a distinction between (1) intangible *legal* rights in the copyrighted work and (2) the physical embodiment of the work. Congress's understanding of the distribution right was broad and, indeed, inclusion of digital phonorecord deliveries in the compulsory licensing scheme of § 115 and the prohibitions of § 506(a)(1)(B) and (a)(1)(C) make that breadth unmistakably clear. It would be an ironic result if the very measures Congress took to protect the distribution right were used to eliminate copyright owners' control over the dissemination of their work over the Internet.

## CONCLUSION

For the foregoing reasons, the Court should hold that the unauthorized transfer of files over the Internet violates the distribution right set forth in 17 U.S.C. § 106(3).

Dated: May 16, 2006

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

RICHARD B. ROPER
United States Attorney

SCOTT FROST (TX-SBN 07488080)
Assistant United States Attorney

/s/ John H. Zacharia
JOHN FARGO
Director, Intellectual Property Staff, Commercial Litigation Branch
Department of Justice, Civil Division
1100 L Street, NW, Rm. 11116
Washington D.C. 20005
(202) 514-7223
John.Fargo@usdoj.gov

JOHN H. ZACHARIA
Trial Attorney
Computer Crime and Intellectual Property Section
Department of Justice, Criminal Division
1301 New York Ave., NW, Suite 600
Washington, D.C. 20005
(202) 305-2310 (tel.) / (202) 514-6113 (fax)
John.Zacharia@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of May, 2006, I electronically filed the foregoing "Statement of Interest of the United States in Opposition to Defendant's Motion to Dismiss the Complaint" with the clerk of court for the United States District Court for the Northern District of Texas using the electronic case filing system of the court. The electronic case filing system will send a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Stacey R. Obenhaus
Lisa L. Honey
Gardere Wynne Sewell
1601 Elm Street
Suite 3000
Dallas, TX 75201-4761
214-999-3000
sobenhaus@gardere.com

John G. Browning
Browning & Fleishman
701 Commerce Street
Suite 510
Dallas, TX 75202
214-752-4130
browninglaw@sbcglobal.net

/s/ John H. Zacharia